426 So.2d 344 (1983)
Lila Mae McKINNIE, Plaintiff-Appellant,
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee.
No. 15119-CA.
Court of Appeal of Louisiana, Second Circuit.
January 17, 1983.
Writ Denied March 18, 1983.
*345 Davenport, Files & Kelly by Mike C. Sanders, Monroe, for plaintiff-appellant.
Marshall W. Wroten, Harvey Lee Hall, Thomas L. Crabson, Frank A. Betanski, Jr., Baton Rouge, for defendant-appellee.
Before PRICE, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Plaintiff, Lila Mae McKinnie, appeals a judgment of the trial court rejecting her demand against the Department of Transportation and Development, hereinafter referred to as the "Department," for damages sustained as a result of a one vehicle accident. We affirm.

FACTS
Between 8:30 and 9:30 a.m. on January 8, 1979, Mrs. McKinnie was driving a Ford pick up truck on Highway 33 in Union Parish enroute from Marion to Farmerville to visit her hospitalized aunt with her daughter, Debra Reeves, as her only passenger. The weather was clear and cold. As Mrs. McKinnie approached a curve in the road at a point where it intersects with a driveway on its north perimeter, she encountered what appeared to be a "strip of ice" extending at least partially across the highway. Mrs. Reeves observed what appeared to be a "little stream of water" as the vehicle approached the curve and warned her mother to watch out for it. Mrs. McKinnie was driving at a speed of approximately 45 miles per hour when her vehicle struck the substance on the road. At that point, the truck began swerving, Mrs. McKinnie applied her brakes, the truck went out of control, and the truck with its passengers came to a halt in a ditch on the North side of the road.
As a result of this accident, Mrs. McKinnie suffered mild to moderate injuries to her neck, left shoulder, lower back and right knee. On November 15, 1979, plaintiff filed a petition, couched in terms of negligence, against the Department. Trial of this case was held on April 9, 1981, and on January 18, 1982, the trial court filed written "Reasons for Judgment" rejecting Mrs. McKinnie's demands. It is from the judgment signed in accordance with those reasons that Mrs. McKinnie appeals specifying the following errors:
1) The Trial Court erred in failing to find that the Department was strictly liable *346 for the injuries suffered by Mrs. McKinnie and in failing to treat this as a strict liability case.
2) The Trial Court erred in finding that the highway in question was in a reasonably safe condition.
3) The Trial Court erred in failing to find that the Department had actual or constructive notice of a dangerous condition.
4) The Trial Court erred in failing to find negligence on the part of the Appellee. [and]
5) The Trial Court erred in finding that a reasonably prudent driver would have anticipated and avoided the patch of ice.
In substance, Mrs. McKinnie argues that she is entitled to recover against the Department under either the theory of strict liability or a theory of negligence.

LIABILITY UNDER LA. C.C. ARTICLE 2317
Under La.C.C. Art. 2317,[1] when harm results from a defect in a thing which creates an unreasonable risk of harm to others, the person in whose custody the thing is when the harm results, is liable for the damage thus caused. Loescher v. Parr, 324 So.2d 441 (La.1975). However, the burden is on the plaintiff to prove the vice or defect in the thing which creates an unreasonable risk of harm to others and that the damage resulted from such vice of defect. Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3d Cir.1980). In other words, in a strict liability case, the claimant is relieved only of proving that the owner or custodian knew or should have known of the risk involved and must still prove that under the circumstances, the thing was defective. A defect is some flaw or fault existing or inherent in the thing itself that creates an unreasonable risk of harm to others. Naylor v. Louisiana Dept. of Public Highways, et al., 423 So.2d 674 (La.App. 1982); Brown v. Winn-Dixie Louisiana, Inc., 417 So.2d 44 (La.App. 1st Cir.1982).
Counsel for Mrs. McKinnie has suggested to this court in oral argument that the defect existing in the highway was that of improper construction of the road which caused faulty drainage thereby allowing water to cross the road. However, there is no evidence in the record, expert or otherwise, that addresses or pertains to the issue of what constituted the defect in the road. After hearing all of the evidence and actually visiting the site of the accident, the trial judge, without amplification or explanation, concluded that water drained from the dirt driveway leading from an abandoned home and across the road and that this drainage was because of the general elevation on the north side of the road. Nevertheless, the trial judge also concluded that plaintiff failed to prove that the road, shoulder or ditches were improperly constructed.
Our review of the record convinces us that the trial court was not "clearly wrong" in concluding that Mrs. McKinnie had failed to prove that the road, shoulder and ditches were constructed or maintained improperly so as to constitute a defect therein which created an unreasonable risk of harm. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, Co., et al., 283 So.2d 716 (La.1973).
Furthermore, our review of the record compels us to conclude that not only did plaintiff fail to prove any defect in the construction and maintenance of the road, shoulder or ditches at the location of the accident, but also that the only fact actually proven by the evidence was the presence of a foreign substance [ice or water] on the road at the time of the accident. The temporary presence of a foreign substance on a curved roadway, in and of itself, is not a defect for the purpose of imposing liability under Article 2317. [Brown v. Winn-Dixie Louisiana, Inc., supra; Naylor v. Louisiana Dept. of Public Highways, et al., supra.] because such substances obviously are not *347 flaws or faults which exist or are inherent in the thing itself. They are not imperfections in the road itself; and even if they were deemed to be such, not every imperfection in a road is so unreasonable as to justify the imposition of non negligent liability. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981).
Accordingly, we conclude that Mrs. McKinnie is not entitled to prevail in this instance under a theory of strict liability, and the trial court was not wrong in rejecting recovery on that basis.

LIABILITY UNDER LA. C.C. ARTICLE 2315
In order to determine whether or not Mrs. McKinnie is entitled to recover under Art. 2315,[2] it is necessary that we summarize briefly the evidence adduced at trial.
James Edward Thrascher, a witness who lived in the same community with Mrs. McKinnie and had known her for twenty years, testified that earlier on the morning of the accident, he had traveled Highway 33 to and from Farmerville and had encountered ice on the road at the accident site. He further testified that it was the only ice he saw on the road and that it had caused him to nearly wreck his vehicle on his return trip from Farmerville. This witness did not recall ever having seen ice at that spot previously but did relate that he had seen a damp condition across the road in the area of this particular driveway on occasions during the past seven or eight years when the remainder of the road was dry. He was of the opinion that the water "seeped out of the ground" but finally admitted that he had no actual knowledge of the water's source.
Phyllis Murphy, wife of the chiropractor who treated Mrs. McKinnie in connection with the injuries sustained as a result of this accident, testified that on a "real cold" morning in January of 1979, she had traversed the area in question encountering what she believed to be a patch of ice approximately two or three feet wide at the curve where the accident occurred. However, she was unsure whether or not this encounter was on January 9, 1979. While she had never observed what she perceived to be ice at this location on other occasions, she did testify generally that she had previously seen water in that area. However, neither could she testify as to the source of the water because of her lack of personal knowledge.
It is noteworthy at this point that neither Mrs. Murphy nor Mr. Trascher ever reported the icing condition which they observed to the appropriate authorities.
The only other two witnesses to testify on behalf of the plaintiff were the plaintiff and her daughter who was a passenger in the truck at the time of the accident. While both testified that water or ice was present at the site of the accident, and that the weather was cold and fair at the time of the accident, neither testified as to the source of that water or ice or the weather conditions prior to the accident. Neither inspected the road after the accident to verify that the substance on the roadway was ice.
The remaining evidence presented by the plaintiff relating to the issue of liability consists of two pictures of the accident site which were purportedly taken several months post accident and which do not depict water running across the road or any damp spots in the curve.
In connection with the defendant's case, Raymond Farris, Parish Superintendent for the Department at the time of the accident, testified that in his job he inspected the roads of Union Parish at least once a week. He stated that he was very familiar with the stretch of highway in question, passed over it at least once or twice a week, and had never seen water standing at the spot in question. Farris did admit during and after an excessive rain, he had seen water run across the road where the driveway intersected with the highway but qualified *348 that admission with the statement that shortly after such a rain the water running across the road ceased. Finally, he testified that he had never received reports of ice on the road at that location.
John Paul Rigger, parish maintenance specialist for Morehouse and Union Parishes, testified he was familiar with the stretch of road in question and that he traveled it about once a month. However, he further testified that he had never seen water accumulate at that spot, water running across the road, or ice on the road at that particular spot.
The only evidence introduced pertaining to the "weather conditions" prior to the accident consisted of certified copies of "Surface Weather observations" for Monroe, Louisiana, located at least twenty five miles southeast of the accident. This exhibit was introduced on behalf of the defendant and was objected to by Mrs. McKinnie's attorney, who contended that it should be afforded no weight by the trial court. We agree with counsel's assertion. While these records indicate it did rain some 1.4 inches in Monroe on January 6 and 7, 1979, and that the temperature at the time of the accident was below freezing in Monroe, they do not refer to nor do they indicate the rainfall nor temperature conditions at the location in question in Union Parish prior to or at the time of the accident.
In summary, this is the totality of the case presented to the trial court regarding the source of water or ice on the curve. It is obvious from a review of the foregoing that the only testimony or evidence regarding the source of any water which may or may not have existed on the roadway at any point in time came from the highway official who testified that after an excessive rain, he had seen water run across the road at its intersection with the driveway but that it would soon cease. It is inescapable that there is no competent evidence in the record whatsoever on which to base a finding that it had rained at this particular location prior to the accident.
While the trial court after physically observing the accident site sometime in 1981 (at least two years after the date of the accident) concluded that water drained down the dirt driveway leading to the abandoned home and across the highway due to the general elevation of the ground on the north side of the road, we can only surmise that this finding was based on his observation of the site coupled with the highway official's testimony of conditions which might exist after an excessive rain at the site. However, he made no finding that it had rained at that particular location at any point in time, close or removed, prior to the accident, and the record, to say the least, is devoid of proof in this regard.
Thus, we conclude that there is no proof of the source of the water or ice.[3] The evidence not only does not preponderate in favor of the plaintiff that any action or inaction of the Department caused the water to be present on the road but we are unable to determine based on this record how it got there. Accordingly, because one of the necessary elements to prove recovery under a theory of negligence is the showing of a causal relationship between the injury suffered by the plaintiff and the action or inaction of the Department, we must conclude that because Mrs. McKinnie has offered no proof as to the source of the water or ice on the highway that the department can not be held liable for "causing" the presence of the water or ice on the highway.
*349 However, we cannot terminate this discussion at this point and on this basis alone find no liability on the part of the Department. We must further determine if the plaintiff proved any other basis on which the Department might be held liable for her injuries.
It is well settled that the state owes a duty to the motoring public to maintain highways in a reasonably safe condition and to remedy conditions which create an unreasonable risk of injury. Mrs. McKinnie certainly falls within the class sought to be protected by such a rule of law. However, this duty to remedy arises from knowledge of an unsafe condition on the highway. Before the state, through the Department of Transportation and Development, may be held liable for an accident caused by a condition that creates an unreasonable risk of injury, it must also be shown that the Department had actual or constructive notice of the condition and a sufficient opportunity to remedy the situation or at least to warn motorists of its presence which it failed to do. See Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Naylor v. Louisiana Dept. of Public Highways, et al., supra.
In the instant case, it is admitted that the Department had notice that on occasions during or after excessive rain, water drained across Highway 33 in the vicinity of the driveway intersection. The evidence, however, does not reveal that the amount of water that drained across the road was excessive, that it accumulated or stood in the road, or that such condition in and of itself had ever presented an unreasonable risk of injury to the motoring public. From this admission, we cannot conclude that the conditions of which the Department had notice created an unreasonable risk of injury. Furthermore, there is nothing of record to cause us to conclude that the Department had constructive notice of any other conditions.
It is apparent to us that the state cannot construct and maintain perfect highways and roads. The law certainly does not make the state responsible for every accident which may occur on state highways; nor is it a guarantor of the safety of the travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. See U.S.F. & G. v. State, Dept. of Highways, 339 So.2d 780 (La.1976).
Therefore, we conclude that the trial court was not clearly wrong in finding, based on the evidence, as well as his credibility evaluation thereof, that the condition of water occasionally draining across the road during and after an excessive rain did not constitute an unreasonable risk of harm. The Department did not act unreasonably in failing to take steps to remedy or warn of this condition. "Unreasonableness" is the traditional standard for the determination of negligence. Not every minor imperfection or irregularity can be said to be patently dangerous (defective) or to create an unreasonable risk of injury within the parameters of La.C.C. Arts. 2315 and 2317. See Burris v. Insured Lloyds, 417 So.2d 511 (La.App. 3d Cir.1982); Shipp v. City of Alexandria, supra.
Likewise, the evidence does not preponderate to show that the Department had either actual or constructive notice that on the date in question, or at any time for that matter, ice had formed on the road or was likely to form at the particular place where the accident occurred. No weather forecasts or predictions were introduced into evidence to show that the Department should have had notice that sufficient rain was expected to fall to cause water to drain across the road and that freezing temperatures were expected or forecasted for January 9, 1979. Additionally, Department officials testified that they had never received any reports about ice on the road in the area at any time.
While we are aware of no cases in Louisiana concerning the formation of ice on roads, we have found cases which involve the formation of ice on state bridges which are analogous and instructive in dealing with this issue.
*350 In Coleman v. Houp, 319 So.2d 831 (La. App. 3d Cir.1975), a spill way bridge iced over in St. Landry Parish. The court found the Highway Department not to be liable for failing to take steps to alleviate or warn of the icy condition on the bridge because it did not have adequate notice of the condition to act prior to the accident. The court in Coleman, stated the well settled rule thusly:
Both parties also cite Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3d Cir.1963) for the well-settled proposition that in order to hold the Department liable for an accident caused by an unsafe or hazardous condition it must be shown that the Department had prior notice, either actual or constructive, of the dangerous condition and sufficient opportunity to remedy same or at least to alert and warn the motoring public of its presence, and failed to do so.

* * * * * *
Counsel cites no cases and this court is aware of none which specifically require a highway department to have crews constantly alerted to cover iced bridges or that require a constant surveillance of weather conditions to anticipate the need for such action. The weather reports of the previous day and into the early part of the night do not indicate such a likelihood of bridges icing over as to require that the department have an overnight crew standing by. Mr. Marcantel testified that the weather forecasts for the previous day were not such as to indicate the necessity for an overnight watch of weather conditions if such is ever so. [Emphasis added.]
Consequently, even though it is a matter of general knowledge that in the wintertime, bridges are likely to "ice over" when the temperature gets below freezing, the Department is not required to take action to alleviate such icing conditions or to warn of such conditions unless such a condition was reasonably expected at a particular time, and the Department has sufficient notice to take the necessary steps to alleviate the condition or warn the motoring public. See Moraus v. State, Department of Transportation, 396 So.2d 596 (La.App. 3d Cir.1981). The rule resulting is that the plaintiff must prove that the Department had good reason to believe that the icing conditions were going to occur and a sufficient opportunity to correct them or warn of their presence. While this rule may be equally applicable to icing conditions on highways under certain factual situations, we conclude that Mrs. McKinnie has not met the requisite burden of proof to warrant the application of the rule to this case. The record does not reflect that the required notice of the icing condition on the curve was in existence.
In order for us to impose liability in this case on the Department, we would have to impute notice of icing to the Department simply because it had knowledge that on occasion during winter months excessive rain might fall and cause water to run across the road and that during the winter months in Louisiana the temperature sometimes falls below freezing, a matter of general knowledge. Unquestionably, this would impose an unreasonable and unrealistic burden upon the Department. In effect, this would place upon the Department the burden of foreseeing a combination of unusual factors, i.e., excessive rain followed by freezing temperatures sufficient to cause the formation of ice across the highway. Under the overall circumstances, we are unable to conclude that the Department was or would be acting unreasonably in failing to protect against these particular consequences. See Kent v. Gulf States Utilities Co., supra. Furthermore, we find no ease of association between the risk presented by the Department's conduct under the overall circumstances presented by this case and the injuries to plaintiff. See Hill v. Lundin & Assoc., 260 La. 542, 256 So.2d 620 (1972).
To allow plaintiff to recover under the facts presented by this case, would allow recovery solely upon proof of an accident that occurred on a public highway when ice or water was present and would accomplish what the law prohibits, i.e., making the *351 state a guarantor or an insurer against all injuries which occur on public roads. Certainly such a result is untenable and cannot be condoned.
Accordingly, we conclude that Mrs. McKinnie failed to prove any acts of negligence on the part of the Department and the trial court was not in error in rejecting her demands.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
JUDGMENT AFFIRMED.
NOTES
[1] La.C.C. Art. 2317 provides in part:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...
[2] La.C.C. Art. 2315 provides in part:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it...
[3] We feel compelled to note that under the facts of this case, it is just as probable that the water or ice got on the road from a circumstance entirely unconnected with rainfall or drainage. We could speculate and conjure up several other related sources of the water, e.g., a car radiator bursting earlier at the site, a travel trailer or motor home emptying a holding tank at that point, or some other third party emptying water on the road. While at first glance, this seems to be somewhat farfetched, there is no less proof regarding such sources than was presented to the court concerning rain and resulting faulty drainage. Certainly, we cannot and will not allow recovery based on such speculation and conjecture. The fact that an accident occurred at this site alone does not elevate the condition of the road to that of an unreasonably dangerous condition of which the Department had actual or constructive notice.