478 So.2d 179 (1985)
Lillie Jean KOPPIE, Plaintiff-Appellant,
v.
COMMERCIAL UNION INSURANCE COMPANY and State Farm Fire and Casualty Company, Defendant-Appellee.
No. 84-668.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1985.
Writ Denied December 20, 1985.
Robert C. McCall, Cameron, for plaintiff-appellant.
Stockwell & Associates, John S. Bradford, Brame, Bergstedt & Brame, Jim Morris, Lake Charles, for defendant-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
*180 DOUCET, Judge.
In this strict liability claim, Lillie Jean Koppie seeks damages for injuries received as a result of a fall on a curved staircase located on the exterior of the Joseph Ray Burleigh residence in Cameron Parish, Louisiana.
Pursuant to a job interview, arrangements had been made for Ms. Koppie to pick up two fire extinguishers at Cameron Fire Equipment on the morning of April 17, 1981. Cameron Fire Equipment, a family owned corporation, was operated by Kirk Burleigh. Ray Burleigh, Kirk's father, was retired, but he and his wife did answer the business phone, an extension of which was located in their home. In addition, certain business records were kept in their house.
The Cameron Fire Equipment office is located behind the elder Burleigh's residence and in front of the Kirk Burleigh residence. On April 17, 1981, at 6 a.m., Lillie Jean Koppie stopped at the Ray Burleigh home rather than continuing past to the Cameron Fire Equipment building where Kirk Burleigh was waiting for her with the two fire extinguishers. At this point, a conflict in the testimony arises. Ms. Koppie testifed that she climbed the curved staircase leading to the front door of the Ray Burleigh home. She states that she knocked on the door and that Mrs. Burleigh answered, bringing with her a medium-size white dog. Ms. Koppie indicated that the dog was barking in a threatening way. In her haste to escape the dog, she fell down the stairs to the concrete base, injuring herself.
Mrs. Burleigh gave a different account. She stated that she was seated in the kitchen drinking coffee when she saw a pickup truck pull up and someone got out and approached the house. She stated that she heard footsteps on the front steps as she got up to go see who was coming. The dog barked and she hushed it. When she got outside, she couldn't see anyone. She went to the edge of the porch and saw Ms. Koppie lying on the ground. Mrs. Burleigh states that Ms. Koppie never reached the top of the stairs and that there was no knock on the door.
Kirk Burleigh testified that he was waiting at the Cameron Fire Equipment building when he saw Ms. Koppie park her truck at his parents' residence. Assuming that she had come for the fire extinguishers, he began walking towards his parents' house. He indicated that although the staircase area was at all times within his view, he never saw Ms. Koppie rise above the ligustrum bushes which blocked his view of the lower part of the staircase. When he arrived at the house, Ms. Koppie was lying at the bottom of the stairs. Ms. Koppie was helped up the stairs. She drank a cup of coffee while the fire extinguishers were loaded into her truck. When presented with a bill for the extinguishers, she claimed to be unable to use her right hand to write a check due to the fall. She refused the Burleigh's offer to drive her to Lafayette. She left the Burleigh residence and negotiated the stairs without incident. She drove to Lafayette. She went to Our Lady of Lourdes Hospital emergency room complaining of pain in her right arm, back and leg. However, she was not deterred from passing a driving test as a part of a job interview for Acme Truck Lines. According to Ms. Koppie's testimony, she was able to work only one week before the pain prevented her from continuing.
The jury found that the accident was a result of a defect in the stairway which caused an unreasonable risk of harm. The jury found that the plaintiff's conduct was a contributing factor in the injury. As instructed by the trial judge, the jury applied comparative fault. They found the Burleighs to be 17% at fault and Lillie Jean Koppie to be 83% at fault. The jury awarded medical expenses in the amount of $1,500.00. No other damages were awarded. The jury found the stairs to be in the custody of the Burleighs personally rather than in the custody of Cameron Fire Equipment. Therefore, judgment was rendered against the Burleigh's Homeowners Insurance coverer, State Farm Fire and Casualty *181 Company. Ms. Koppie appealed the verdict, State Farm answered the appeal.
On appeal it is necessary to examine: 1) whether Ms. Koppie has shown a defective condition in the stairs which caused her injury; 2) whether the stairs were in the custody of the Burleighs personally or in that of Cameron Fire Equipment; 3) whether comparative fault may be applied to a claim in strict liability; and 4) whether it is necessary to award general damages where special damages have been awarded.

STRICT LIABILITY
In Colleps v. State Farm General Insurance Company, 446 So.2d 988 (La. App. 3rd Cir.1984), this court discussed the strict liability provisions of La.C.C. 2317 as follows:
"An injured party seeking damages under LSA-C.C. art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that it occasioned an unreasonable risk of injury to another and that his injury was caused by the defect. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981)."
Not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. McKinnie v. Dept. of Transportation and Development, 426 So.2d 344 (La.App. 2nd Cir.1983), Campbell v. Tidwell, 407 So.2d 1359 (La. App. 3rd Cir.1981).
The jury found that the staircase had a defect which caused an unreasonably dangerous condition. This finding was apparently based on the testimony of the plaintiff's expert witness, Michael Boudreaux, an architect. He stated that he felt there was an inherent danger in the design of spiral staircases because the treads are tapered, that is, each step is narrower at the inside of the spiral than at the outside of the spiral. He further indicated that the spiral staircase at the Burleigh residence had some slight variances in riser heights, the distance in height between one stair step and the next, and variances in the width of the steps from one step to the next. He testified that these variances could cause a person to trip.
The staircase in question was not actually spiral but rather curved, so that the bottom stair was at a right angle to the top stair.
The defendant's expert witness, Carl Anthony Joiner, an architect, testified that in his opinion, a spiral staircase, if properly used, was no more hazardous than any other staircase. He stated that the slight variances in the Burleigh stairs were not perceptible without measurement and posed no unreasonable danger. Other testimony indicates that no one had ever fallen on the stairs before.
Under the circumstances, we cannot find that the minor irregularities in the staircase give rise to an unreasonable risk of harm. As we stated in Cloud v. State, 420 So.2d 1259 (La.App.1982) writ denied 423 So.2d 1166:
"A finding for the plaintiff herein would mean that any time there is a fall on stairs which can be found to have any measurable variation in riser heights or a measurable tread slant, strict liability is mandated....
... it is doubtful that any steps, old or new, are so perfectly constructed that minor imperfections cannot be found."
Since the plaintiff has not proven that the stairs presented an unreasonable risk of injury, she cannot recover under strict liability. For the above reasons, we conclude that the jury was clearly wrong in finding liability and awarding damages.
Therefore, we need not address the questions of custody, comparative fault and damages.
*182 Accordingly, the judgment of the trial court is reversed.
REVERSED.