496 So.2d 1352 (1986)
James DEAN, et al., Plaintiffs-Appellants,
v.
LAKE CHARLES HARBOR & TERMINAL DISTRICT, Defendant-Appellee.
No. 85-1157.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*1353 Scofield, Bertstedt, Rudie R. Soileau, Lake Charles, for plaintiffs-appellants.
Stockwell and Associates, Robert W. Clements and Thomas G. Henning, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
James Dean sued the Lake Charles Harbor and Terminal District (Port) based on strict liability for personal injuries he sustained while on the Port's premises. The trial court rendered judgment in favor of the Port finding that Dean's negligence caused his injuries. Dean appeals contending that the trial court erred in: (1) failing to find the Port strictly liable; (2) finding Dean negligent; and, (3) failing to award damages. We affirm.

FACTS
James Dean was employed with the Inland River Transportation Company as a deckhand on the "Honey Bear", an inland tugboat. On October 8, 1981, the date of the accident, the "Honey Bear" was docked at Berth 15 of the Port. The Port's dock was designed with a fender system to absorb the shock produced by the impact of incoming vessels during docking maneuvers. The system included 8" by 12" gaps or holes in the timberworks. The "Honey Bear" used a seven foot aluminum ladder, with plywood on the top and bottom, as a gangway to get from the boat to the dock. The gangway was attached to a vertical ladder on the second deck of the tugboat because of a difference in height between the boat's main deck and the dock, and had a slight downward slant when it rested on the fender system just to the left of one of the gaps. Dean was injured while carrying a small pump across the gangway to a truck on the dock. As he attempted to exit the gangway, Dean stepped into one of the gaps with his right foot causing him to fall, injuring his left knee.

STRICT LIABILITY
The issue is whether the trial court erred in not finding the Port strictly liable. Civil Code Article 2317 provides, in pertinent part: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." To prove a case under strict liability, the plaintiff must show: (1) that the thing, the gaps in the fender system, was in the custody of the Port; (2) the defect or vice of the thing; and, (3) that the damage occurred through the defect or vice. He need not prove any personal negligence on the guardian's part. The liability arises from his legal relationship to the person or thing which creates an unreasonable risk of harm to others. Once strict liability under article 2317 is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1975).
Article 2317 custody means supervision and control. Smith v. Chemical Construction Corporation, 215 So.2d 530 (La.App. 1st Cir.1968). It is undisputed that the fender system was within the control and supervision of the Port.
Plaintiff contends that the fender system was defective because of the gaps in the timberworks. We disagree. A thing is considered defective under article 2317 if it presents an unreasonable risk of harm to others in its normal or ordinary use. Loescher, supra. The unreasonableness of *1354 the risk is fundamental to a finding of strict liability, and the probability and magnitude of the risk are to be balanced against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3rd Cir.1981). In addition, the plaintiff can be aided in carrying the burden of proving the defect by the showing of an unusual occurrence resulting in his injury. Marquez v. City Stores Co., 371 So.2d 810 (La.1979).
Application of these principles to these facts reveals that during normal use, the fundamental duty and use of the fender system is to absorb energy during vessel docking maneuvers. The gaps in the timberworks were open and obvious, and served no other purpose than to transmit energy produced upon impact. Edgar Rosteet, a mechanical engineer who coordinated design of the "fender system", testified that the fender system was not intended to be used as a workplace or walkway for people. He opined that the gaps in the fender system were not structurally unique since he had experienced gaps in other types and designs of fender systems. The Port engineer, D.W. Jessen, testified that Berth 15 and the fender system were designed for larger vessels and were not designed to accommodate tugboats.
Dean testified that he had previously noticed the gaps while using the gangway to load supplies, and that he had experienced similar fender systems with gaps in the timberworks during his travels. Furthermore, there were no other reported injuries resulting from use of the fender system. Therefore, the probability and magnitude of the gaps presenting an unusual risk of harm to Dean is outweighed by the apparent benefits of the fender system. Hunt, supra. Dean further testified that he was not watching where his feet were being placed when he exited the gangway while carrying the pump to the dock. There was no proof of an unusual occurrence to prove the defect, Marquez, supra; nor did Dean show that the gaps in the fender system were of such a nature as to constitute an unreasonable risk even had he been using ordinary care in transporting the pump.
After carefully reviewing the record, we find that plaintiff has failed to prove that the gaps in the fender system constitute a defective thing under article 2317. There is no cause of action under strict liability absent a defective thing.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.