535 So.2d 1192 (1988)
James Harold DAVIDSON, Plaintiff/Appellant,
v.
SHREVEPORT YACHT CLUB, INC., et al., Defendant/Appellee.
No. 20157-CA.
Court of Appeal of Louisiana, Second Circuit.
November 30, 1988.
Writ Denied February 17, 1989.
*1193 James L. Fortson, Shreveport, for plaintiff/appellant.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for Shreveport Yacht Club & Western World Ins. Co., defendant/appellee.
Blanchard, Walker, O'Quin & Roberts by Lawrence W. Pettiette, Jr., Shreveport, for William S. Ramsey Hanover Ins. Co., defendant/appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
This suit for personal injuries sustained in an accident on February 26, 1986 was instituted by Davidson against the Shreveport Yacht Club, Inc., its insurer, Western World Insurance Co., Ramsey and his insurer, Hanover Insurance Co. The accident occurred while plaintiff and a member of the Shreveport Yacht Club were fishing from the piers of the Club. Plaintiff was fishing from a pier located adjacent to a boat slip leased from the club by Ramsey. Returning from one end of the pier, he did not see the boat hoist cables stretched at ankle length across his path. He tripped and fell into the water, hitting his shoulder on a portion of the pier. It was later determined that his entire shoulder was crushed, requiring surgery to implant a prosthesis.
As lessee of the slip, Ramsey owned and was responsible for maintenance of all cables, equipment and appurtenances in the area of his slip. The Yacht Club owned and was responsible for the dock area, pilings, walkways and piers. The following is a photograph of the area in question.
*1194 
Plaintiff alleged in his petition that the Yacht Club and Ramsey were strictly liable for the defective condition of the boathouse and/or pier, and alternatively, were negligent in failing to maintain the premises in a safe condition, allowing the cables to create a hazard, and failing to warn of this hazard.
Ramsey and Shreveport Yacht Club answered, denying liability and asserting plaintiff's negligence in failing to exercise ordinary care as the cause of this accident. Ramsey's answer also alleged that the combination of plaintiff's and the Yacht Club's fault caused the accident. The Yacht Club and Ramsey filed cross-claims against each other and their respective insurers. These cross-claims were answered and liability was denied.
Plaintiff testified he had fished at the Yacht Club several times before this accident. He claimed that although he had been on this pier once before, he had never fished from this particular portion, or walkway of the pier. However, he was impeached by use of his deposition testimony, which indicated that he had fished from the scene of the accident before. He stated that the accident occurred when he stepped down from the main walkway onto the pier of slip 228 and walked to the edge to fish. After a few minutes of unsuccessful fishing, he leaned his gear up against a wall of the metal boathouse and headed back to his car to change lures. As he walked back to the main pier, he tripped over the cables and fell, causing the injuries of which he now complains. The evidence indicated that boat hoist cables such as the ones over which he tripped were present in numerous locations in the area, and plaintiff admitted he was aware of this. In fact, as the trial judge observed, he had successfully crossed these same cables in order to reach his fishing spot a few minutes before, but did not remember seeing them immediately before he tripped. He could not say that he was watching his step before his fall.
Plaintiff also presented the testimony of Hillman Deatman, a specialist in occupational safety and health. Hired just before trial to evaluate the risk potential of the cables obstructing the walkway, Deatman gave his opinion that the cables were hazardous and presented an unacceptable safety risk, especially in light of the existence *1195 of pipe conduits and split level walkways in the area, which he stated diverted attention from the hazardous cables. He relied on the National Fire Protection Association's "Life Code," covering risk in public places, which prohibits placing obstacles in the path of travel. He recommended either eliminating this risk by running the cables underneath the dock, or if this is not feasible, covering the cables and placing a hand-rail and posting a warning in the path of travel. On cross-examination, however, he admitted that the code he relied upon was primarily designed for protection against fire in buildings and other structures. He was also thoroughly impeached with respect to his substantive knowledge of this code.
Defendants presented testimony indicating that many people frequently stepped over these cables without incident, and that no accident such as this one has occurred since the Yacht Club opened some twenty years ago. The Club's personnel manager regularly inspected the area and did not deem it to be dangerous.
Judgment was rendered in favor of defendants, rejecting plaintiff's demands at his cost, and all incidental demands were also dismissed, with prejudice. In his written opinion, the trial judge held plaintiff failed to prove the cables over which he tripped posed an unreasonable risk of harm. In reaching this conclusion, he noted that the cables did not extend across a main walkway and that other slips at the Yacht Club had the same type of cables, and presented some risk to persons working in the area. However, he found that their utility in raising and lowering boats far outweighed the minimal risk of injury to someone such as plaintiff. He also stated that plaintiff was aware of the cables, since he had stepped over them a few minutes before, and therefore could have avoided this accident. He gave little weight to the testimony of plaintiff's safety expert, as the witness relied on a code which was inapplicable to this situation and was thoroughly impeached.
Plaintiff appealed the judgment, claiming error in the court's determination that the cables did not pose an unreasonable risk, and in failing to find the Shreveport Yacht Club and Ramsey negligent in maintaining their property in an unsafe condition. On appeal, plaintiff's position is that these cables, stretched at ankle height across an area where it is expected that people will walk, did constitute a defective and unsafe condition which created an unreasonable risk of harm.
Defendant Shreveport Yacht Club maintains that the court properly weighed the probability and magnitude of the risk against the utility of the thing, and properly exercised his discretion in evaluating the credibility of the witnesses in favor of defendants. It is argued that a landowner is only required by law to act reasonably, rather than as an insurer against the possibility of an accident, and that a proper factor for consideration in cases such as this is the ease with which a condition may be observed by a potential victim. Several Louisiana cases which resolve similar accident disputes on the basis of victim fault were cited, and it was contended that plaintiff was negligent in failing to observe a condition which he could have in the exercise of reasonable care.
Defendant Ramsey points to plaintiff's prior successful encounter with the cables, and the fact that no prior accidents had occurred, in support of the court's decision. Also cited is plaintiff's duty, as a pedestrian, under Louisiana law to see obstructions which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances.
The primary issue raised by this appeal is whether the trial court's finding, that the cables over which plaintiff tripped did not pose an unreasonable risk of harm, is manifestly erroneous.
The duty owed by a landowner to a guest on his property is to discover any unreasonably dangerous condition on the premises and either correct the condition or warn of its existence. Boutte v. Pennsylvania Miller Mut. Ins. Co., 386 So.2d 700 (La.App. 3d Cir.1980). The nature of this duty was further explained in Shelton v. Aetna Casualty & Surety Co., 334 So.2d *1196 406 (La.1976), where our Supreme Court stated:
"The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Thus the landowner is not liable for any injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner." p. 410
The determination of whether a particular condition poses an unreasonable risk of harm involves balancing the probability and gravity of the harm posed against the utility of the thing and the individual and societal rights involved. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Rasmussen v. State Farm Fire & Casualty, 509 So.2d 712 (La.App. 3d Cir.1987).
Not every minor imperfection or irregularity can be said to create an unreasonable risk of injury. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. McKinnie v. Department of Transportation and Development, 426 So. 2d 344 (La.App. 2d Cir.1983), writ denied, 432 So.2d 266 (La.1983); Koppie v. Commercial Union Insurance Company, 478 So.2d 179 (La.App. 3d Cir.1985).
A pedestrian is not required to look for hidden dangers, but is bound to observe his course to see if his pathway is clear. The pedestrian is held to have seen those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances. Artigue v. South Central Bell Telephone Co., 390 So.2d 211 (La.App. 3d Cir.1980).
Our review of this record and the applicable jurisprudence convinces us that these cables did not pose an unreasonable risk of harm. They were obviously necessary for the proper operation of the boat hoists. While this is admittedly the only slip designed in such a way as to have cables stretched across a walkway, they were not obstructing a main walkway, and as the trial judge noted, all other slips did have these cables which presented some risk to pedestrians. Furthermore, plaintiff was relatively familiar with this area and knew, or should have known, that these types of obstructions were to be expected on piers where boats are docked. As the trial judge also pointed out, plaintiff had successfully crossed these same cables just minutes before the accident, and could not say that he was watching his step before his fall. Therefore, he could have avoided this accident with the exercise of a reasonable amount of caution.
Under the facts and circumstances of this case, we cannot say that the trial judge was clearly wrong in his conclusion. In accord, see: Ivey v. Housing Authority of Mansfield, 514 So.2d 661 (La.App. 2d Cir. 1987); Lejeune v. Acadia Parish School Board, 517 So.2d 1030 (La.App. 3d Cir. 1987); Dean v. Lake Charles Harbor & Terminal District, 496 So.2d 1352 (La.App. 3d Cir.1986); Duncan v. State Farm & Fire and Casualty Co., 499 So.2d 632 (La. App. 4th Cir.1986); Rasmussen v. State Farm Fire & Casualty, supra.
Therefore the judgment is AFFIRMED, at appellant's cost.