600 So.2d 867 (1992)
Dorothy Louise PARDEE, Plaintiff-Appellant,
v.
NATCHITOCHES PARISH POLICE JURY, et al., Defendants-Appellees.
No. 90-1263.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*868 Charles W. Seaman, Natchitoches for plaintiff-appellant.
Gold, Weems, Bruser, Sues & Rundell, Peggy St. John, Alexandria, for Natchitoches Parish Police Jury.
Watson, Murchison, Crews, Arthur & Corkern, Ronald E. Corkern, Jr., Natchitoches, for Sheriff's Dept.
Before YELVERTON and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
Plaintiff, Dorothy Louise Pardee (Pardee), appeals the trial court judgment denying her personal injury claim against defendants, former Natchitoches Parish Sheriff Norman A. Fletcher, present Natchitoches Parish Sheriff Boyd Durr and the Natchitoches Parish Police Jury, for injuries she received in a November 16, 1988, slip and fall on a set of steps at the Natchitoches Parish Courthouse. We affirm.

FACTS
Shortly before midnight on November 15, 1988, Pardee, 55 years of age, drove to the Natchitoches Parish Courthouse (courthouse) to wait in the basement during a brief period of inclement weather. Shortly *869 after midnight when the thunderstorm had passed, Pardee exited the courthouse through the Sheriff's department entrance and proceeded down a slightly sloped concrete walkway to a set of steps adjacent to a concrete ledge. As she stepped onto the first step while grasping the left handrail, her right foot slid forward and her toes went over the edge. Plaintiff fell over forward and suffered injuries to her knees and hands.
The steps were constructed in May of 1985 by Natchitoches Parish Sheriff Deputy Travis I. Trammel, Jr. at the request of former Natchitoches Parish Sheriff Norman A. Fletcher at a cost of $200. The metal steps were placed against a 42-44 inch concrete ledge in an area maintained by the Natchitoches Parish Police Jury so that courthouse employees and the public could step over the concrete ledge in using the Sheriff's department entrance rather than having to walk around. Photographs in the record reveal the steps are constructed of steel angle iron for the basic framework with a layer of industrial steel grating welded to the framework for each step. (For the convenience of the reader, we have attached to this opinion a photocopy of the stairs at issue marked P-18 for identification). The steps were hung on the concrete ledge on the courthouse lawn by a lip extending from the stringers[1] and were not bolted to the concrete ledge.
The record contains two sets of measurements of the stepsone set by plaintiff's expert witness, Phillip W. Beard, and another set included in an exhibit offered by the two Sheriffs.
Phillip W. Beard, an expert in structural engineering, testified that the handrail is 34 inches above the left stringer. The tread depths measure approximately 8 inches each with a tolerance of ¼ inch. The five risers measure approximately 8¼ to 8¾ inches each except for the 9 inch bottom riser. The steps are approximately 36 inches wide and the angle of descent is 45.8 degrees.
Beard opined that the steps were unreasonably dangerous because of several reasons. First, the steps did not comply with the National Fire Protection Association (NFPA) standards or the American National Standards Institute (ANSI) regulations due to its excessive angle of descent (45.8 degrees versus the 32.47 degrees NFPA allowance), the absence of a handrail on the other side as required by both NFPA and ANSI standards, the excessive riser heights (8¼ to 8¾ inches versus the 7 inch NFPA allowance and the 7 inch class A stairs ANSI standard) and the overly narrow tread depths (approximately 8½ inches versus the 11 inch NFPA allowance). Secondly, Beard cited the failure to permanently attach the steps to the concrete ledge as well as the irregular surface of the steel grating as code violations. Thirdly, he referred to the diamond shaped openings in the steel grating as a NFPA violation and dangerous since it exceeded the maximum ½ inch diameter openings allowance. Lastly, Beard referred to the overall visual complexity of the courthouse area as dangerously diverting one's attention from the steps.
However, on cross-examination, Beard acknowledged that the NFPA standards are for fire escapes and emergency situations only and do not apply to the everyday use of steps. As to the necessity of a second handrail, Beard admitted that since plaintiff was grasping the left side handrail when she slipped and fell, the lack of a right side handrail was of no significance. Beard also stopped short of characterizing as a defect the failure to permanently attach the steps to the concrete ledge since there was no testimony to show that the steps were unstable or wobbled. Finally, Beard acknowledged that the unusually large diamond shaped openings were not a cause in fact of the accident since Pardee was wearing flat soled tennis shoes at the time of the accident rather than high heel *870 shoesthe reason behind the ½ inch diameter NFPA restriction.
The Sheriff's exhibit shows the handrail measuring approximately 39 inches above the top tread and 46 inches above the bottom tread. The four tread depths in descending order are 9½ inches, 9¾ inches, 9½ inches and 9½ inches, respectively and the diamond shaped openings in the treads measured 1 inch by 3½ inches. The risers in descending order past the top riser measure 8 3/8 inches, 8 3/8 inches, 8¼ inches and 8¾ inches. No measurement is given for the top riser since the steps when measured were no longer against the concrete ledge. The steps are approximately 35½ inches wide. No angle of descent is given.
At trial, plaintiff testified that she had been going to the courthouse during periods of inclement weather since 1984 or 1985. She arrived at the courthouse shortly before midnight and her only attempt that morning at traversing the steps resulted in her slip and fall. Plaintiff was wearing rubber-soled tennis shoes and testified that she was trying to be cautious in descending the wet steps in the dark.
Also testifying at trial were former Natchitoches Parish Sheriff Norman A. Fletcher, present Natchitoches Parish Sheriff Boyd Durr and chief criminal deputy Johnny Manning. All three testified they used the steps almost everyday without incident since the steps were first installed in May of 1985. None of the three witnesses had knowledge of any accident on the steps before the present case.
Following trial on the merits, the trial court denied Pardee's claim concluding that none of the defendants were negligent either in the design, construction or maintenance of the steps.

LIABILITY FOR UNREASONABLE RISK OF HARM
In Carter v. Bd. of Sup'rs of Louisiana St. Univ., 459 So.2d 1263, 1265 (La. App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985), our brethren summarized the relevant law:
"The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. This person must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. This duty is the same under both the strict liability theory of LSA-C.C. art. 2317 and the negligence liability theory of LSA-C.C. art. 2315.
There is a difference in proof between these two theories of liability, however, in that under LSA-C.C. art. 2315, the plaintiff must show that the owner or custodian either knew or should have known of the risk, whereas under LSA-C.C. art. 2317, the plaintiff is relieved of proving scienter on the part of the defendant.
Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; and (3) the defect in the property was a cause-in-fact of the resulting injury. In both negligence and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing." (Citations omitted.)
Not every minor imperfection or irregularity will give rise to liability. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Koppie v. Commercial Union Ins. Co., 478 So.2d 179 (La.App. 3rd Cir.1985), writ denied, 479 So.2d 922 (La. 1985).
Only if manifestly erroneous will this court disturb the trial court's factual findings. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the case sub judice, the record evidence supports that the trial court did not err in denying liability for Pardee's slip and fall. Beard's conclusion that the steps are unreasonably dangerous is premised on *871 the NFPA and ANSI code violations. We find Beard's reliance on these codes for his ultimate conclusion misplaced since the stringent NFPA rules were established for exits used by persons during emergency situations. The NFPA rules are purposefully strict since ordinary persons are less likely to act prudently in emergency situations and may even panic. The steps at issue were not intended as an emergency exit. The record contains no evidence to suggest that Pardee utilized the steps that early morning for anything other than as a convenient shortcut to her automobile.
Likewise, the ANSI code (sometimes referred to as the handicap code) establishes minimum standards for steps traversed by handicapped persons in public facilities. As Beard acknowledged at trial, there was no evidence to suggest that Pardee was handicapped.
However, assuming arguendo that the NFPA and ANSI standards were applicable, we conclude that the crucial element of causation linking the alleged unreasonable dangerous conditions to the accident is lacking. Both Pardee and Beard admitted that the absence of a second handrail on the right side was not a factor in the accident. Additionally, Beard opined that the failure to permanently attach the steps to the concrete ledge was not a defect per se and even pointed out that the unusually large openings in the treads had nothing to do with Pardee's fall. In Koppie v. Commercial Union Ins. Co., supra, which involved a fall on a curved staircase, we held that slight variances in riser heights and width of steps in the curved staircase did not give rise to an unreasonable risk of harm and reversed the jury's verdict of liability.
In reviewing the entire record, we find that the steps were not unreasonably dangerous and the minute differences in the riser heights and tread depths were nothing more than minor imperfections that did not contribute to Pardee's accident. The record supports that Pardee fell because her foot "started sliding" when she descended the stairs in her tennis shoes and not from any imperfections in the stairs. This is clearly reflected from her own testimony: "I caught the rail with my left hand. [N.B. The hand rail is on the left side as one descends the stairs.] I had my purse in my right hand. And I just stepped down and my foot started sliding. And then I just.... just couldn't get a grip cause I just once started falling on the steps, down the steps."
Since we do not find liability, we pretermit any discussion as to the custodian of the steps among the defendants.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Dorothy Louise Pardee.
AFFIRMED.
*872 
NOTES
[*] Judge Bernard N. Marcantel, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The nomenclature involving steps includes stringers, treads and risers. Stringers are the two primary diagonal structural pieces that support the steps and reach from the top part of the steps to the bottom. Treads (steps) are the actual stepping surfaces between the stringers. Risers are the vertical distances between adjacent treads.