509 So.2d 479 (1987)
Mignon MOUTON, Plaintiff-Appellee,
v.
SOUTHERN PACIFIC TRANSPORTATION CO., et al., Defendants-Appellants.
No. 86-432.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
*480 Fournet & Adams, Robert J. Adams, Lafayette, Marshall W. Wroten, Baton Rouge, for defendants-appellants.
Mouton & Roy, Alan K. Breaud, Lafayette, Earl H. Willis, St. Martinville, for plaintiff-appellee.
Before LABORDE and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
LABORDE, Judge.
Plaintiff/appellee, Mignon Mouton, filed suit against Southern Pacific Transportation Company, the City of Breaux Bridge, and, by amending petition, the State of Louisiana, through the Department of Transportation and Development (DOTD). All of the defendants filed third party demands against each other and against the Parish of St. Martin. Luke Dore's suit against Mignon Mouton, for property damages, was consolidated with this suit, but the demand was settled before trial. Ultimately, the trial court dismissed all of the defendants, and their third party demands, except DOTD.
After a bench trial, the sole remaining defendant, DOTD, was found liable for plaintiff's damages in the amount of $166,348.54. From this judgment, DOTD appeals specifying eight errors of the trial court.[1] As is readily apparent, the assignments relate to the trial court's finding of fact which will not be disturbed absent manifest error.
The trial judge has provided us with written reasons for judgment setting out his findings and supporting them with his considerations. We find no manifest error and adopt the following as our own:
"This is a suit for damages due to a motorcycle accident. Plaintiff alleges that on July 31, 1981 she was traveling on her motorcycle in a westerly direction on Refinery Road in the City of Breaux Bridge and *481 that as she was crossingthe [sic] railroad tracks of defendant Southern Pacific, she lost control of her motorcycle causing her to fall down in front of the vehicle of Mr. Luke Dore who was proceeding in an easterly direction on said road. Plaintiff further alleges that the accident was due to the negligence of defendants Southern Pacific and City of Breaux Bridge. Plaintiff filed an amending petition adding the State of Louisiana as a defendant. Plaintiff alleges that the accident was also due to the negligence of this defendant; plaintiff alleges specific negligence and strict liability. Defendant State answers with a general denial. Defendant further answers alleging that the accident was due to the negligence of plaintiff and also alleging the defenses of contributory negligence and assumption of risk, comparitive [sic] negligence, last clear chance, and the negligence of the other named defendants. At the conclusion of the trial on the merits held on August 15, 1983 there was judgment of dismissal in favor of all the other named defendants leaving as the sole remaining defendant the State of Louisiana.
"The facts as developed at trial show that in addition to plaintiff there were three witnesses to the actual accident: Mr. & Mrs. Luke Dore who were in their vehicle traveling in an easterly direction on the road where the incident occurred and Mrs. Myrtle Raymond who was stopped in her vehicle at the intersection of Main Street and Refinery Road preparing to turn onto Refinery Road, an estimated one block from the scene of the accident. It is from the testimony of these three witnesses that the evidence must be adduced as to how and why the accident occurred.
"Plaintiff had been shopping in Breaux Bridge and, not being able to find what she wanted, decided to return to Lafayette by way of Refinery Road (La. Highway 336-2). Plaintiff was riding her motorcycle, a Honda CM 400, headed in a westerly direction. As plaintiff was crossing the bridge on Refinery Road, which is a railroad bridge, she lost control of her motorcycle and both she and the motorcycle hit the ground, sliding for some distance[.] At about the same time Mr. Luke Dore was headed in an easterly direction on Refinery Road and had just gone up by the bank by the bridge when he saw plaintiff and stopped his vehicle. At some point after the plaintiff lost control of her motorcycle it collided with the stopped Dore vehicle.
"Plaintiff was brought to Lafayette General Hospital immediately following the accident. There she was examined by Dr. Edward J. LeBlanc, Jr., who determined that an abdominal exploration was necessary after performing an abdominal exam and finding tenderness and an absence of bowel sounds. The abdominal exploration was conducted that evening; plaintiff being given general anaesthesia. Dr. LeBlanc is a general surgeon who performs general and thoracic surgery. The doctor found a hematoma in the omentum and a tear in the jejunum which is the first portion of the small intestine; this tear was approximately 20 inches to 25 inches distal to [t]he beginning. The doctor also found a tear in the first portion of the small bowel which was approximately sixteen inches from its beginning. The doctor resected the segment of the torn bowel and hooked up the two ends of the intestines. As a result of the exploratory incision plaintiff was left with a scar of approximately six inches which ran from the breast bone to the naval. Following Dr. LeBlanc's examination of plaintiff he consulted with Dr. Louis Charles Blanda, Jr., an orthopedic surgeon, due to plaintiff's fractures. Dr. Blanda determined that plaintiff had an open fracture of the left tibia and a fracture dislocation of her left wrist as well as some contusion of the median nerve which is the nerve that supplies feeling to the thumb, index finger, middle finger, and part of the ring finger. Dr. Blanda also treated plaintiff during surgery; this treatment consisted of putting her leg in a cast to repair the fracture of the tibia and for the wrist, cleaning up and closing the wound of the fracture and immobilizing the wrist with a compression splint and further performing an open reduction internal fixation by placing two metal pins in the wrist to repair the contusion. Plaintif was discharged *482 from Lafayette General on August 7, about one week after the accident.
"Plaintiff's next visit with Dr. LeBlanc was on August 17, 1981. At that time Dr. LeBlanc found her condition to be satisfactory and discharged her from his care although she did have two more follow up office visits. Plaintiff's final visit with Dr. LeBlanc was on December 22, 1981; at which time she was totally discharged from his care. On August 10, 1982, plaintiff was brought to Lady of Lourdes Hospital complaining of severe abdominal pain. Dr. LeBlanc conducted an abdominal exam and found generalized abdominal tenderness throughout the abdomen. X-rays were taken which showed signs of air in the colon; the doctor found this indicated an incomplete type of intestinal obstruction. Surgery was performed that same day and the doctor found that a solitary adhesive band approximately four inches in length had developed from where the small bowel becomes the large bowel in the area known as the ileocecal region; this had constricted one segment of the small bowel and a complete obstruction was beginning to develop. This band was divided which relieved the obstruction. An incidental appendectomy was performed, which is done as a matter of course, and the abdomen was closed. From the second surgery plaintiff was left with an additional scar of approximately three to four inches in the lower abdominal area. Plaintiff was discharged from Lady of Lourdes on August 14, 1982. Plaintiff had three routine follow up visits on August 25, September 8, and in December of 1982. Thereafter plaintiff was discharged with no residual disability besides the exterior scarring.
"Plaintiff's first visit with Dr. Blanda after her release from the hospital was on August 12, 1981. The doctor found that she was doing well. During plaintiff's next visit on August 19, 1981 Dr. Blanda changed the splint on her wrist to a cast which ran the length of the arm up to the elbow and he took the leg cast off. The doctor found no instability or weakness in the leg. Plaintiff's next visit was on August 26, 1981 and at that time the doctor changed the arm cast to a removable splint. X-rays were taken which the doctor felt looked good. The doctor recommended motion exercises and whirlpool treatments. Plaintiff's next visit was on January 6, 1982. X-rays were taken which the doctor felt looked fine. The doctor found mild stiffness in the wrist. He recommended that plaintiff continue with the exercises. Plaintiff's final visit with Dr. Blanda was on August 25, 1982. The doctor found that plaintiff had pain over the wrist and some persistent weakness and stiffness. X-rays were taken which showed a small area of non-union of the tip of the ulna bone; this is the area where the ligaments attach. X-rays of the radius showed that it had completely healed. Plaintiff complained of some mild pain around the lower leg fracture. Plaintiff was discharged with a finding of no permanent impairment to the leg and a five percent residual disability of her arm.
"Louisiana Civil Code Article 2317 is the law applicable to strict liability actions and it states: We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.... [T]he Louisiana Supreme Court in Loescher v. Parr, 324 So.2d 441 (La.1976) [sic], [provides] one of the leading cases on the [law of] strict liability. The Loescher Court, 324 So.2d at 446, stated:
When the [sic] harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or gauardianship [sic] of the person or thing may be held liable for the damages thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
See also Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980); Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Kent v. Gulf *483 State Utilities Co. [sic], 418 So.2d 493 (La. 1982). Municipalities and other public bodies may be found liable damages for things [sic] in their custody. Jones, supra; Shipp supra. The plaintiff in a strict liability case must prove three elements: (1) that the thing which caused the damage was in the care or custody of the defendant, (2) that the thing had a vice or defect, and (3) that his injury was caused by the defect. See Jones, supra; Loescher, supra; Shipp, supra; Hunt v. City Stores, Inc., 387 So.2d [585] (La.1980). The Courts have defined a vice or defect as one which creates an unreasonable risk of injury to another. Loescher, supra; Goudchaux v. State Farm Fire & Cas. Co., 407 So.2d 1317 (La.App. 3rd Cir.1982) [sic]. Or as stated by the Shipp Court, 395 So.2d at 729: Was the risk of suffering injury so unreasonable as to justify the imposition of non-negligent liability. Once the plaintiff has established these three elements the defendant may only escape liability by proving that the damage was caused: (1) by the fault of the victim, (2) by the fault of a third person, or (3) by an irresistible force. See Jones, supra; Loescher, supra; Langlois v. Allied Chemical Corporation, [258 La. 1067] 249 So.2d 133 (La.1971); Sumner v. Foremost Ins. Co., 417 So.2d 1327 (La.App. 3rd Cir.1982); Sikes v. McLean Trucking Co., 383 So.2d III [sic] (La. App. 3rd Cir.1980). The First Circuit Court in Payne v. Louisiana Dept. of Transp., Etc., 424 So.2d 324 (La.App. 1st Cir.1983), goes on to conclude that the victim fault sufficient to preclude recovery under Article 2317 must be conduct of such a nature as to constitute a cause-in-fact of the accident. 424 So.2d at 329.
"In the instant case, there is no question that the road upon which plaintiff was riding her motorcycle, La. Highway 336-2, was in the care and custody of defendant, State of Louisiana. La.R.S. 48:193 provides that the board of highways is directed to repair and keep in operating condition all municipal roads or streets which form a continuation of one of the said highways. Furthermore, the State entered into a stipulation with the other named defendants which indicated ... that La. Highway 336-2 would be maintained and inspected by the State. The State in its post-trial memorandum admitted as much. Thus, plaintiff has proven the first of the three elements necessary to establish liability. The second, and in this case most important element, is whether or not the thing, in this case the highway had a vice or defect. The testimony of all of the witnesses during the trial on the merits was to the effect that plaintiff was off of the bridge and onto the roadway when the accident occurred. There was additional testimony at trial as to the positioning of the road, the bridge, and the railroad tracts. The road on which plaintiff was proceeding is a two lane highway, with traffic proceeding in each direction. The bridge, on the other hand, is a one lane bridge and there are signs indicating such. The railroad tracks cross the bridge in the center of the roadway but after the bridge is crossed the track continues to head in a straight line direction while the road curves away from the track to the left. It is concerning the condition of this roadway where the major conflicts in the testimony of plaintiff and defense witnesses occur. Plaintiff testified that the road surface was uneven due to deep cuts and ruts in the road. Plaintiff further testified that there were many potholes and she described the road surface as broken, bumpy and rough. The three remaining witnesses to the accident, Luke Dore, Lucy Dore, and Myrtle Raymond, did not testify as to the condition of La. Highway 336-2. Plaintiff's witness, Dudley Mouton, testified as to the pictures which were taken approximately one week after the accident. This witness testified that the pictures were taken on the west side of the bridge of the riding road surface. These pictures, plaintiff 20-A and 20-B, showed a roadway in very poor condition; the surface contained many potholes and a broken and uneven surface. Defendant objected to the introduction of the pictures claiming that they did not represent pictures of the roadway. Defendant introduced its own pictures of the roadway, identified as S-1, which were taken a full year after the accident. Shelton Joseph, a patrolman with the City of Breaux Bridge, was the investigating *484 officer at the scene of the accident. The officer testified that in his intial [sic] report he found that the road was bad. He further testified that at the time of trial, which was a full two years after the accident, that he had changed his mind and thought just that the railroad track was too high. Alex Watkins, the District Maintenance Engineer who was responsible for the maintenance of the roads in the area including Refinery Road, testified as to three reports dated March 20, 1981, July 16, 1981, and July 29, 1981 (two days before the accident) which stated that the railroad crossing was bad. Although Mr. Watkins testified that the railroad crossing was only on the east side of the bridge and not on the west side where the accident occurred, he did admit under cross-examination that there was a railroad crossing sign on the west side of the bridge. The Court finds pertinent three other statements made by this witness: (1) that the road was in fair condition if an individual was riding in an ordinary sedan (2) that the roadway was more heavily traveled at the time of the accident before the new bridge was built and (3) that the State records indicated that this particular roadway was in disrepair for seven or eight months and yet no work was done. Teddy Babin, civil engineer for DOTD, testified as to a survey which he prepared of the roadway. The Court found this testimony valueless as the survey was prepared on July 26, 1983 more than two years after the accident. The next witness for the State was Whitney Lasseigne, parish maintenance superintendent, who was responsible for the maintenance of the roadways of St. Martin Parish including Highway 336-2. This witness testified that the railroad crossing referred to in the reports was on the east side of the bridge but under cross-examination he testified that on each side of the track [sic] there were problems. When further questioned by the Court the witness testified that there is a heavy cane truck traffic on this road which has a detrimental effect on road surfaces such as this. The final witness for the State was Darrel Blanchard, successor in office to Whitney Lasseigne. Mr. Blanchard did not come into office until September of 1981 and his sole testimony was that besides the repair of two potholes on Highway 336-2, no repair work had been done in this area. The Court considering the evidence adduced at trial as a whole finds that the road way [sic] was in such poor condition as to constitute an unreasonable risk of harm to another. The roadway at the time of the accident was a heavily traveled thoroughfare and yet no repair work was performed for seven months prior to the accident. The witnesses who were in the best position to see and have knowledge of the roadway at the time of the accident described it as bad. Even Mr. Watkins, the District Maintenance Engineer, described the roadway as only fair for a sedan; the Court can only project what this would mean for a two wheel vehicle. The Court finds that the roadway did rise to the level of a vice or defect as contemplated by the case law.
"The third element which plaintiff must prove is that her injury was caused by the defect. As stated [p]reviously, there were only three witnesses to the accident besides plaintiff. Plaintiff testified that she had been riding the motorcycle for ten years and had no prior tickets. She further testified that she lost control due to the road conditions. Lucy Dore testified only that she saw the motorcycle coming at their vehicle and that she couldn't estimate the speed but that she knew that it was over 15 m.p.h. Luke Dore testified that plaintiff's vehicle made six spins, wiped out, then righted itself and hit his vehicle. Mr. Dore also testified that he thought plaintiff was going between 45-50 m.p.h. Myrtle Raymond, the only impartial witness, testified that plaintiff seemed to be in control when the motorcycle was upright but then the motorcycle began to fall and the plaintiff went with it, the momentum carrying plaintiff and the vehicle on until the collision with the Dore vehicle. Officer Shelton testified that there was no determination of why plaintiff lost control. The Court concludes from the facts presented at trial that the defective roadway caused the injuries to plaintiff. The poor condition of the roadway caused plaintiff to lose control of *485 her motorcycle and the ensuing damages occurred.
"Plaintiff has established the necessary elements under a theory of strict liability and defendant may only escape liability by proving one of the three defenses. In this case, two of the defenses are not even claimed by defendant and may be dispensed with immediately: that of third person fault and irresistible force. The remaining defense is victim fault. As the Courts of this state have indicated, victim fault means that the conduct of the victim was a substantial factor in causing the injury complained of. See Sumner, supra; Loescher, supra. The Courts have also found that this involves a voluntary exposure to the risk with full knowledge and appreciation of the danger. See Langlois, supra; Hebert v. Maryland Casualty Company, 369 So.2d 708 (La.1979) [Tate, J, concurring in the denial of writs.]. The evidence adduced at trial shows that plaintiff had been on Refinery Road before but in an automobile and not on a motorcycle, that when she noticed that the condition of the roadway was poor she immediately slowed the vehicle down to a reasonable speed. The Court finds that the conduct of plaintiff was not a substantial factor in causing her injuries; that plaintiff handled herself well under the circumstances. Thus, the Court finds that defendant has failed to prove the defense of victim fault.
"The evidence is that plaintiff was involved in a vehicular accident which did result in injury to her. It is within the context of this evidence that the Court must determine the extent of plaintiff's injuries and the amount of damages to which she is entitled. A plaintiff who has been injured should be compensated; to compensate is to place the injured party in the position she would have been in if the wrong had not occurred."
Thereafter, the trial judge determined various elements of damages; some are substantiated by the record, some are not. The general rule of appellate review of damage awards in this jurisdiction is that the amount awarded at trial will not be altered on appeal absent abuse of discretion by the award setter, in this case the judge. Hatcher v. State Through Department of Transportation, 467 So.2d 584, 593 (La.App. 3d Cir.1985), on remand, 478 So.2d 774 (La.App. 3d Cir.), writ denied, 479 So.2d 923 (La.1985). "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La.C.C. art. 2324.1.
Only after finding that the trial court abused its much discretion can the appellate court disturb the award, "and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.... It is never appropriate for a Court of Appeal ... simply to decide what it considers an appropriate award on the basis of the evidence." Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976).
The trial court awarded plaintiff $500.00 in lost wages even after plaintiff admitted that she lost nothing by way of employment as a result of the injuries. This amount must be reduced to zero.
Plaintiff's medical expenses, amounting $4,648.54, were entered into evidence without rebuttal by defendant. Plaintiff is entitled to compensation in that amount for her medical expenses. Plaintiff did not offer proof as to the cost of future medical expenses. Plaintiff did not bear her burden of proving an amount; therefore, the trial court correctly found that plaintiff is not entitled to be compensated for future medical expenses. The trial court's finding that plaintiff's motorcycle was worth $1,200.00 was within its much discretion.
The trial court, before awarding general damages, correctly noted that a review of the quantum awards in our jurisdiction for identical or similar injuries, constitutes only persuasive authority. See Alexander v. Leger, 423 So.2d 731, 735 App. 3d Cir. 1982), writ denied, 430 So.2d 75 (La.1983). Each personal injury case must be decided on its own merits according to the particular facts and circumstances of the injured party. Id. The facts of this case show *486 that plaintiff is a resilient young athelete with no substantial after-effects from the accident. We do not disparage the amount of pain this plaintiff endured, but she is as capable now as she ever was of pursuing a meaningful life.
The record reflects that plaintiff is a twenty-two year old woman currently working as a dental hygienist. She stated that she has no problems working, but that she cannot "lean back all the way" on her left hand due to her broken wrist. Her broken tibia and fibula healed without complication. The numerous lacerations and abrasions have mended. She also stated that she has had no trouble with her stomach since the second operation. Two scars (6 and 4 inches) on her abdomen remind plaintiff of her two operations. These injuries were conclusively shown to be the direct result of the motorcycle accident.[2] We find, however, that the trial court did abuse its much discretion in setting general damages.
The trial court awarded plaintiff $100,000.00 "for the pain she suffered due to her two surgeries." This amount obviously meant to compensate plaintiff for the trauma to her intestines. The trial court also awarded plaintiff $20,000.00 for the two scars on her belly as a result of the operations. The trial court abused its discretion in awarding this combined amount ($120,000.00) for plaintiff's abdominal misfortune. We lower that amount to the highest reasonable amount supported by the record: $50,000.00.
Finally, the trial court awarded plaintiff $25,000.00 for her pain and suffering associated with her fractured leg and wrist. He also awarded plaintiff $15,000.00 for the residual functional disability. While generous, we find no abuse of discretion with these awards.
To recapitulate, we affirm the judgment of the trial court finding the State of Louisiana, through the Department of Transportation and Development, liable for the injuries of plaintiff, Mignon Mouton. We amend the award by reducing it to the highest point reasonably within the trial court's discretion; that amount being $95,848.54.
For the above and foregoing reasons, the judgment of the trial court is affirmed as amended.
AFFIRMED AS AMENDED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] DOTD specified the following as errors:

"1. The trial court erred in finding a defect in the roadway involved when the evidence adduced on the trial of this matter was clearly to the contrary.
2. The trial court erred in finding that the alleged defect it erroneously found to exist was the cause of the accident involved in this lawsuit when the evidence adduced on the trial of this matter clearly showed that such accident was caused solely and completely by the negligent operation of her vehicle by plaintiff in this matter and by her excessive speed under the circumstances.
3. The trial court erred in substituting its personal opinion of the evidence for the clear evidence presented on the trial of this matter.
4. The trial court erred in failing to find that under the circumstances of this case the plaintiff was guilty of the voluntary assumption of an unreasonable risk after she had perceived the alleged danger and appreciated the same and nevertheless knowingly continued on her way to her detriment.
5. The trial court erred in failing to find the plaintiff guilty of contributory negligence and/or comparative negligence which finding was in keeping with the evidence adduced on the trial of this matter.
6. The trial court erred in failing to find that if a defect in fact existed in the roadway involved in this matter that the accident was caused by victim fault on the part of the plaintiff and that under the ruling of Loescher VS. [sic] Parr, the State should be absolved of liability to plaintiff herein.
7. The trial court erred in failing to find that plaintiff had the last clear chance to avoid this accident and knowingly and willingly failed to exercise the same by continuing on in [sic] her travels on a road she found to be unsuitable for safe driving thereon.
8. The trial court erred in awarding excessive general damages to the plaintiff."
[2] Plaintiff testified that she approached the bridge at 15 m.p.h., then slowed down when she saw the ruts and potholes. She crossed the bridge then lost control of the motorcycle. By the time she hit Mr. Dore's stopped vehicle, her speed must have been minimal.