G. WILLIAM SWIFT, Jr., Judge Pro Tem.
The issues presented by this appeal are whether the jury erred in failing to find strict liability on the part of the defendant, in apportioning 60% of the fault for the accident to the plaintiff and in fixing plaintiff’s general damages in the sum of $125,-000.00.
This is a tort action instituted by plaintiff, Willie John Conner, against Motel 6, Inc., defendant, and its liability insurer, National Union Fire Insurance Company (National Union), for injuries he received from a fall on August 15, 1986, in the bathroom of Room 72 of defendant’s motel in Lake Charles, Louisiana. Willie Conner’s wife, Eunice, and his two major daughters, Sue and Jackie, also sued for loss of consortium.
The defendant and its insurer answered, denying liability and pleading negligence of plaintiff. They asserted a third party demand against Venus Manufacturing Company (Venus), who was the manufacturer of the shower stall where the accident allegedly occurred. Plaintiff then joined Venus and its insurer as additional defendants. After a trial the jury found both plaintiff and defendant negligent and apportioned their fault at 60% and 40%, respectively. Plaintiff's general damages were fixed at $125,000.00 and his medical expenses at $20,000.00. Awards were also made to the wife and daughters for loss of consortium, which are not contested on this appeal. The jury found no liability on the part of Venus. Judgment was rendered in accordance with the jury verdict. Thereafter, plaintiff moved for a judgment notwithstanding the verdict, requesting that the court set aside the jury verdict as to *1250 the finding of contributory negligence by plaintiff and that he be granted judgment for the full amount of damages set by the jury. The motion was denied and the plaintiff has appealed. We affirm.
FACTS
Willie John Conner, a 75 year old native of Cameron Parish, Louisiana, was ordered by the local Civil Defense to evacuate his home because of an approaching hurricane in the Gulf of Mexico. Reservations were made with Motel 6 for the entire Conner family.
The assistant manager of the motel at the time, Mrs. Darlene D. Eddington, testified that when they checked in on August 14,1985, Mr. Conner was very unsteady on his feet. When identification was requested he attempted to retrieve his wallet from his back pocket but was shaking so badly that he was not able to. His grandson removed the wallet from his pocket and filled out the registration card. Mr. Richard L. Eddington, the manager, was also present and he remembered Mr. Conner as being a very large and heavy man who needed help walking when he entered the motel. Mr. Eddington also stated that plaintiff was not able to stand alone and had to lean against the wall.
Plaintiff testified that he and his family arrived at Motel 6 around 4 or 5 o’clock P.M. on August 14 and he decided to go to bed around 7:00 P.M. because he was feeling tired. He said that he got up around 3:15 A.M. to use the bathroom and decided to take a shower. When he went to get into the shower he “slipped on something” and tried to grab something to support himself, but there was nothing on the shower doors to hold on to. When plaintiff fell his right hip hit the dam at the bottom of the shower and he fractured the neck of the femur. Plaintiff stated he was definitely in the shower when he slipped, but could not remember whether he was all the way in or not
Evidence submitted during the trial suggests that the accident may have happened in a different manner. On cross-examination Mrs. Conner was read a portion of her deposition taken earlier in which she stated that her husband said he had slipped when he was getting out of the shower, and that the foot which was out of the shower had slipped. She replied this was her imagination and denied that her husband had told her anything about how the accident occurred.
Prior to the accident plaintiff had undergone medical treatment for several ailments. In April, 1985, he consulted a Dr. Thielen about a urinary tract problem he was experiencing. Upon examination, the doctor discovered that plaintiff was suffering from an enlarged prostate and recommended he be hospitalized for a prostatic biopsy. Thereafter, Dr. Theilen performed a biopsy and a transurethral resection to enable the plaintiff to urinate freely. The biopsy revealed that plaintiff was suffering from prostate cancer and Dr. Thielen referred plaintiff to Dr. Larry Hauskins of Lake Charles, a cancer specialist. Mr. Conner had 25 outpatient external radiation treatments which ended on July 8, 1985. He was then hospitalized for a radiation implant which was put in place on July 31, 1985, and removed on August 2,1985. Dr. Hauskins discharged plaintiff on August 8, 1985, and referred him to Dr. B.F. Thompson, a pulmonary specialist, because he observed that Mr. Conner had a cough. Dr. Thompson concluded that the plaintiff had palsy, a chronic obstructive lung disease which causes the sufferer to experience uncontrollable tremors of the body. At the time of the accident, plaintiff was using bronchial dilaters and antibiotics in order to combat the palsy.
The plaintiff asserts the following assignments of error:
(1) The jury committed manifest error in failing to find Motel 6 strictly liable for his injuries;
(2) The jury failed to apply the proper standard of care in determining contributory negligence and committed manifest error in finding him 60% contributory negligent;
(3) The $125,000.00 for general damages was inadequate to compensate him for his injuries.
*1251 The lower court’s findings of negligence on the part of Motel 6 and no liability by the shower stall manufacturer, Venus, have not been contested on appeal and are now final.
APPLICABILITY OF STRICT LIABILITY
Plaintiff contends that the jury committed manifest error in failing to find defendant strictly liable for his injuries pursuant to LSA-C.C. Articles 2317 and 2322.
Strict liability for things in one’s custody is found in LSA-C.C. Article 2317 which states:
“We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications_”
LSA-C.C. Article 2322 further defines the application of the general principles of LSA-C.C. Article 2317 to the owner of a building. LSA-C.C. Article 2322 provides as follows:
“The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
In Shipp v. City of Alexandria, 395 So. 2d 727, 728, 729 (La.1981), the Louisiana Supreme Court summarized plaintiff’s burden of proof under LSA-C.C. Article 2317 as follows:
“An injured party seeking damages under art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by the defect. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.”
See also, Jones v. City of Baton Rouge, Parish of East Baton Rouge, 388 So.2d 737 (La.1980); Loescher v. Parr, 324 So.2d 441 (La.1975); Mouton v. Southern Pacific Transportation Co., 509 So.2d 479 (La.App. 3 Cir.1987).
In this particular case, there is no dispute that the shower stall was in the care or custody of the defendant. The issue that must be addressed is whether there was a vice or defect therein which created an unreasonable risk of injury to give rise to strict liability and, if so, whether this defect was the cause of plaintiff’s injury. This court in Bradford v. Consolidated American Insurance Company, 493 So.2d 895, 898 (La.App. 3 Cir.1986), citing Koppie v. Commercial Union Insurance Company, 478 So.2d 179 (La.App. 3 Cir.1985), writ den., 479 So.2d 922 (La.1985), defined what type of defect gives rise to strict liability and said that:
“[Ujnder a theory of strict liability not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. McKinnie v. Department of Transportation and Development, 426 So.2d 344 (La.App. 2 Cir.1983); Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3 Cir.1981).”
Plaintiff argues on appeal that the shower used by plaintiff while a guest at Motel 6 had a slippery floor caused by soapy film and that this condition presented an unreasonable risk of injury.
The Louisiana jurisprudence is clear that the mere presence of a foreign object on the premises does not constitute a defect in the premises within the meanings of the articles giving rise to strict liability. This court in Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3 Cir.1981), held that the presence of a foreign object on the premises is not in and of itself a defect for the purpose of strict liability. In Campbell, the plaintiff filed a tort action to recover *1252 damages for personal injuries she sustained when she fell in a driveway parking area located behind a building owned by one of the defendants. She testified that she fell and twisted her ankle after stepping on some foreign object, which she alleged was either a clump of clay (mud) or a stone. This court denied plaintiff any recovery and stated at page 1359:
“We disagree with plaintiffs contention that the presence of a foreign object, such as a piece of dirt or clay, if in fact there was one on the premises, constitutes a defect within the meaning of Civil Code Articles 2317 and 2322, giving rise to Louisiana’s counterpart to strict liability.”
The evidence as to whether there was in fact a soapy film in the shower stall used by the plaintiff when the accident occurred and how it actually occurred is conflicting. Nevertheless, if it had been clearly established that there was a soapy film there, its presence in and of itself would have been insufficient for the court to sustain a finding of strict liability.
An independent safety consultant, Mr. Robert D. Owen, testified on behalf of plaintiff and offered his opinion as to whether the condition of the shower used by Mr. Conner at Motel 6 posed an unreasonable risk of injury to Motel 6 guests. After completing an inspection of the room and the shower in which the accident occurred, he testified that cleaning procedures, in conjunction with the slippery nature of the terrazo material used to manufacture the floor of the shower stalls, presented an unreasonable risk of harm to the public. In particular, he pointed out that the maids were improperly using a bathroom cleanser called “Scum Clean”. He said that the manufacturer’s instructions call for the surface to be rinsed off with fresh water after it is scrubbed. He pointed out that the maids simply wipe the showers with towels which causes a slippery film to build up over a period of time. He also testified that the absence of a handrail or a support device in the shower contributed to this risk of harm. He stated that all these conditions were contributing factors in bringing about plaintiff’s accident. On cross-examination, counsel asked Mr. Owen whether the slippery condition inside the shower stall would be relevant if Mr. Conner slipped on the bathroom floor while stepping out of the shower. He replied it probably would not be relevant.
By way of rebuttal, counsel for Venus offered the testimony of Mr. John Calvin Gorley, Jr., who was the vice-president and general manager of Venus. He discussed the design and makeup of the shower and stated that there are no standards or regulations regarding the slipperiness of the floor. Furthermore, he said there were only plumbing code standards that prescribed the amount of slope in the shower, height of the dam, and the minimum size. In addition, he testified that an independent lab test was performed to test the coefficient friction of the terrazo base floor while wet. The test result showed that coefficient of the floor was .66, which is higher than the .5 standard used by the flooring industry as an acceptable level of safety for walking.
A maid employed by Motel 6, Linda Carr, summarized the procedure used by Motel 6 to clean the showers. She testified that first they spray a cleanser called “Scum Clean” into the shower, then with a pad they scrub the floor and finish by wiping the floor with a wet rag. Finally, to insure that there is no water left on the floor a dry towel is used to finish the process. She further testified that she cleaned the room occupied by Mr. Conner the day before he checked in, and when she finished cleaning the shower she was not aware of any film left on the floor. She added that she had never slipped in any of the showers while working at Motel 6. She also said that after she finishes cleaning a room, a housekeeper goes back and checks to make sure the work is done properly and that on the day she cleaned Mr. Conner’s room the head housekeeper checked her work and found no problem.
Richard and Darlene Eddington, the motel managers, testified that no one had complained to them about the condition of the shower being slippery or not having *1253 been cleaned properly. They also said they had never heard of anybody slipping and falling in any of the motel rooms, either before the accident or after the accident. In addition, Mr. Eddington testified that after plaintiff injured himself, in the course of filling out the report he went down to plaintiff’s room with the head housekeeper to check the shower and found no foreign substance or anything in the bathroom which would make the shower slippery or hazardous.
The jury after weighing all the evidence and testimony unanimously held that Motel 6 was not strictly liable. A trier of fact’s finding of fault are factual and in the absence of clear manifest error or an abuse of discretion, must be upheld on appeal. Courmier v. Travelers Insurance Company, 486 So.2d 243 (La.App. 3 Cir.1986), writ den., 489 So.2d 250, 251 (La.1986). After a review of the record, we are in agreement with this finding and conclude that the plaintiff failed to prove the shower contained any defect which created an unreasonable risk of harm which was a cause-in-fact of his injury. Therefore, Motel 6 was not strictly liable to plaintiff.
CONTRIBUTORY NEGLIGENCE STANDARD
Plaintiff also contends that the jury committed manifest error in finding him 60% at fault. He argues that the jury applied the wrong standard of care in reaching their decision in this respect. Because of his age and physical conditions, the jury should have applied a more relaxed standard to determine negligence on his part.
We are unable to say from the record that the jury did not consider Mr. Conner’s age and infirmities in determining the reasonableness of his actions under the circumstances. Presumably they did. La.C. C.P. Art. 1812(A). The jury charges regarding contributory negligence were the very jury charges submitted by counsel for plaintiff. The standard of conduct requested by plaintiff and thereafter charged to the jury was that of a reasonable man under like circumstances. After the charge was given the jury was removed from the courtroom and the trial judge asked counsel whether they had any objections to the charges given. Counsel for plaintiff stated that he had no objections thereto.
The jury’s findings that Motel 6 was not strictly liable and that Willie Conner was guilty of 60% contributory negligence were unanimous.
When counsel filed a motion for judgment notwithstanding the verdict, for the first time he questioned the jury instructions regarding the standard for negligence on the part of plaintiff.
LSA-C.C.P. Article 1793(C) provides:
“C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds for his objection. Opportunity shall be given to make the objection out of the hearing of the jury.”
Jurisprudence has consistently held that a party cannot claim as error the use of improper jury charges where he fails to object to the charges prior to the jury retiring to consider its verdict. Wright v. State Farm Mutual Automobile Insurance Company, 445 So.2d 206 (La.App. 3 Cir.1984); Ryals v. Home Insurance Company, 410 So.2d 827 (La.App. 3 Cir.1982), writ den., 414 So.2d 375 (La.1982). Since plaintiff’s counsel did not object to the instructions regarding plaintiff’s negligence prior to the jury retiring to consider the verdict, this assignment of error has no merit.
QUANTUM
Plaintiff contends in his final assignment of error, that the jury abused its discretion in finding the total general damages amounted to $125,000.00. We disagree.
LSA-C.C. Article 2324.1 provides:
“In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.”
*1254 Before this court can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So. 2d 332 (La.1976). Only after making such a finding can we modify the lower court’s award then only to the extent of raising it to the highest point which is reasonably within the discretion afforded this court. Coco v. Winston Industries, Inc., supra; Reck v. Stevens, 373 So.2d 498 (La.1979).
Applying these principles to the facts of the present case, we find that the jury did not abuse its discretion in arriving at $125,000.00 as the total general damages sustained by the plaintiff for his injuries. At the time of his accident plaintiff was 75 years old. He sustained a fractured femur which required surgery to repair. He was hospitalized from August 15,1985, through September 6, 1985, and according to his physician, Dr. Thomas Ford, there have been no subsequent hospitalizations.
During his hospitalization plaintiff's fractured femur neck was repaired with an endoprosthesis. The endoprosthesis used by Dr. Ford is basically a metal ball that fits on a stem that is inserted down in the middle of the thigh bone with the ball being placed in the hip socket. Dr. Ford testified that usually this operation is done when patients are over 60 years old. The most common prognosis is that patients walk again, but usually need the assistance of a cane. In Mr. Conner’s case, previous medical problems, including emphysema and cancer of the prostrate, affected his prognosis.
As a result of his emphysema small air sacs in plaintiff’s lungs collapsed due to the general anesthetic. Other complications then developed. The plaintiff developed an illius which is a condition where the intestines go to sleep and normal wave motions cease, causing the intestines to swell. He also developed a blood clot in his leg. With medication both of these problems were resolved during his hospitalization period. No further complications arose and plaintiff was discharged September 6, 1985.
Dr. Ford continued his care of Mr. Conner after discharging him from the hospital. Plaintiff’s next visit was on November 21, 1985. At that time, plaintiff was complaining of some weakness but was having no. pain. No medication was prescribed at this time and Mr. Conner was instructed to return on an as-needed basis.
Mr. Conner returned approximately five months later on April 14, 1986. At that time, Dr. Ford testified that plaintiff was experiencing some pain when walking. X-rays revealed that he had developed hetero-topic osification around the hip joint. Dr. Ford said that this is a rare phenomenon which causes bone tissue to grow around bone joints and that in patients such as Mr. Conner it is probably related to his generally poor medical condition. This limits Mr. Conner's movement and causes discomfort when he walks. This condition has caused Mr. Conner to be confined to a wheel chair for the most part, except for small walks around the house. Dr. Ford’s prognosis is that Mr. Conner will never get better, and will be confined to using a walker. Dr. Ford did not feel that medication was justified or needed and Mr. Conner did not see Dr. Ford again until November 4, 1986, for purpose of review in connection with the trial. At that time the plaintiff’s physical condition had not changed. The doctor explained that the presence of this bone growth would limit to some extent abc action of the hip and leg, but it did not inhibit the rotation of the joint. Dr. Ford concluded that plaintiff is free to do whatever he feels like doing, although he will be required to use a walker when moving about. However, Mr. Conner’s condition has completely stabilized, there would be no more bone growth and he would need no future medical care.
The jury was afforded an opportunity to assess the demeanor of the witnesses, including that of the plaintiff, and to review all of the medical testimony presented. It considered Mr. Conner’s age, prior medical problems, and physical limitations in arriving at his award. It cannot be disturbed on appeal in the absence of manifest error. Toups v. T G & Y Stores, 488 So.2d 296 (La.App. 3 Cir.1986). We do not find this *1255 to be the case and we will not modify this jury finding on appeal.
For the above and foregoing reasons, the judgment of the trial court is affirmed with the costs of appeal to be paid by the plaintiff-appellant.
AFFIRMED.